**RECORD NO. 15-4604**

In The

# United States Court Of Appeals
## For The Fourth Circuit

# UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

# JOHN MOORE, JR.,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE**

————————

**BRIEF OF APPELLANT**

————————

**Denzil H. Forrester**
**THE LAW OFFICES**
  **OF DENZIL H. FORRESTER**
**3325 Washburn Avenue, Suite 103**
**Charlotte, NC  28205**
**(704) 632-9992**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street  ♦  P.O. Box 1460 (23218)  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

# TABLE OF CONTENTS

Page:

TABLE OF AUTHORITIES .................................................................................. iii

STATEMENT OF JURISDICTION ..................................................................... 1

ISSUES PRESENTED FOR REVIEW ................................................................ 2

STATEMENT OF THE CASE ............................................................................. 2

       Statement of the Facts ................................................................ 7

SUMMARY OF ARGUMENT ............................................................................. 8

ARGUMENT ........................................................................................................ 9

I.    A CONSTITUTIONAL VIOLATION OCCURRED WHEN DEFENDANT PLED GUILTY WITHOUT THE ASSISTANCE OF COUNSEL ...................................................... 9

    A.    Standard of Review ................................................................ 9

    B.    Discussion ................................................................................ 10

          1.    Deception Observed By the Family and the Defendant ................................................................ 12

          2.    Follow the Money .......................................................... 19

          3.    Prejudice to the Defendant .......................................... 24

II.    THE DISTRICT COURT PARTICIPATED TOO MUCH IN THE NEGOTIATED PLEA .................................................. 25

    A.    Standard of Review ................................................................ 25

    B.    Discussion ................................................................................ 26

1.    The Magistrate's Court Should Have Perceived the
      Signs ........................................................................... 26

2.    The Power of the Court Does Not Trump the
      Requisite for a Knowing and Voluntary Plea of
      Guilty .......................................................................... 27

III.  APPELLANT SHOULD HAVE BEEN ALLOWED TO
      WITHDRAW HIS PLEA OF GUILTY ........................................... 32

  A.   Standard of Review ................................................................. 32

  B.   Discussion .............................................................................. 33

    1.    There Are Valid Reasons for Withdrawal of the
          Plea of Guilty .................................................................. 33

CONCLUSION ........................................................................... 41

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

ii

# TABLE OF AUTHORITIES

Page(s):

**Cases:**

*Bennett v. United States,*
2011 U.S. Dist. LEXIS 78046 (D.N.H. July 11, 2011) .................. 25

*Blakeney v. Lee,*
2007 U.S. Dist. LEXIS 32922 (W.D.N.C. May 3, 2007) ................ 12

*Elmore v. Ozmint,*
661 F.3d 783 (4th Cir. 2011) ........................................... 39

*Gideon v. Wainwright,*
372 U.S. 335 (1963) ...................................................... 10

*Hatfield v. Ballard,*
878 F. Supp. 2d 633 (2012) .........................................30-31

*Hill v. Lockhart,*
474 U.S. 52 (1985) ........................................................ 25

*Jackson v. United States,*
638 F. Supp. 2d 514 (2009) ........................................... 15

*McMann v. Richardson,*
397 U.S. 759 (1970) ...................................................... 10

*Muhammad v. State,*
177 Md. App. 188 (2007) ............................................... 31

*North Carolina v. Alford,*
400 U.S. 25 (1970) ............................................... *passim*

*Peretz v. United States,*
501 U.S. 923, 11 S. Ct. 2661, 115 L. Ed. 2d 808 (1991) ................ 27

*Reckmeyer v. United States*,
709 F. Supp. 680 (E.D. Va. 1989) ..................................................... 13

*Roe v. Flores-Ortega*,
528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000) .............. 14

*Rompilla v. Beard*,
545 U.S. 374, 125 S. Ct. 2456, 2463, 162 L. Ed. 2d 360 (2005) ..... 14

*Ruffin v. Kemp*,
767 F.2d 748 (11th Cir. 1985) ......................................................... 13

*Strickland v. Washington*,
466 U.S. 668 (1984) ....................................................... 15, 16, 20, 23

*Thomas v. Arn*,
474 U.S. 140 (1985) ................................................................. 10, 26

*United States v. Baldovinos*,
434 F.3d 233 (4th Cir. 2006) ........................................................ 11

*United States v. Benton*,
523 F.3d 424 (4th Cir. 2008) ........................................................ 32

*United States v. Bolden*,
325 F.3d 471 (4th Cir. 2003) ........................................................ 31

*United States v. Bradley*,
455 F.3d 453 (4th Cir. 2006) ................................................... 29, 32

*United States v. Clark*,
434 F.3d 684 (4th Cir. 2006) ........................................................ 29

*United States v. Cronic*,
466 U.S. 648 (1984) ....................................................................... 24

*United States v. Delfino*,
510 F.3d 468 (4th Cir. 2007) ........................................................ 40

*United States v. Ductan*,
  800 F.3d 642 (4th Cir. 2015) ................................................9-10, 26

*United States v. Elkins*,
  2013 U.S. Dist. LEXIS 101058 (W.D. Va. July 19, 2013) .............23

*United States v. Fisher*,
  711 F.3d 460 (4th Cir. 2013) ....................................................34, 35

*United States v. Flores-Lopez*,
  2008 U.S. Dist. LEXIS 43127 (2008) ..............................................26

*United States v. Lambey*,
  974 F.2d 1389 (4th Cir. 1992) ........................................................24

*United States v. Moore*,
  921 F.2d 245 (4th Cir. 1991) ....................................................33, 39

*United States v. Moussaoui*,
  591 F.3d 263 (4th Cir. 2010) ....................................................14, 24

*United States v. Murray*,
  65 F.3d 1161 (4th Cir. 1995) ..........................................................11

*United States v. O'Neil*,
  352 Fed. Appx. 859 (2009)........................................................27, 40

*United States v. Parrilla-Tirado*,
  22 F.3d 368 (1st Cir. 1994)............................................................34

*United States v. Richardson*,
  195 F.3d 192 (4th Cir. 1999) ..........................................................10

*United States v. Shaffer Equip. Co.*,
  11 F.3d 450 (4th Cir. 1993) ............................................................23

*United States v. Thompson-Riviere*,
  561 F.3d 345 (4th Cir. 2009) ..........................................................32

*United States v. Torres-Rosario,*
447 F.3d 61 (1st Cir. 2006)............................................32-33

*United States v. Torres-Roserio,*
22 F.3d 368 (1st Cir. 1994).............................................33

*United States v. Ubakanma,*
215 F.3d 421 (4th Cir. 2000).............................................33

*Wiggins v. Smith,*
539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003)...............39

*Williams v. Muse,*
2014 U.S. Dist. LEXIS 88199 (2014)...............................25

## Statutes:

18 U.S.C. § 2252A...........................................................2

18 U.S.C. § 2252(a)(5)(B)...................................................1

18 U.S.C. § 3231.............................................................2

18 U.S.C. § 3583(a)(b).......................................................7

18 U.S.C. § 3742(a).........................................................2

28 U.S.C. § 636(b)(3).......................................................27

28 U.S.C. § 1291............................................................2

28 U.S.C. § 2255...........................................................13

**Constitutional Provision:**

U.S. Const. amend VI ................................................................ 15, 39

**Sentencing Guideline:**

U.S.S.G. § 3E1.1 ............................................................ 5, 9, 28, 38

**Rules:**

Fed. R. App. P. 4(b)(1)(A) ............................................................ 2

Fed. R. Crim. P. 5(c)(3) ............................................................ 1

Fed. R. Crim. P. 11 .............................................. 12, 24, 25, 27

Fed. R. Crim. P. 11(d)(2)(B) ..................................................... 34

N.C. State Bar Rule 7.2 (2003) ............................................... 12

## STATEMENT OF JURISDICTION

On February 21, 2012, a one count Bill of Indictment was filed, against John Daniel Moore, Jr., (Moore) the sole defendant, in the Western District of North Carolina, Charlotte Division.  A Notice of Forfeiture and Finding of Probable Cause was contained within the Bill of Indictment.  In Count One Moore was charged with possession of, or having access with intent to view, Activities Regarding Material Constituting or Containing Child Pornography, in violation of 18 U.S.C. § 2252(a)(5)(B).  On September 29, 2012, Moore was arrested in Tampa, Florida, and transported to the Western District of North Carolina, following a Rule 5(c)(3) Hearing. JA 652.  On November 5, 2012, he made his initial appearance in Charlotte, North Carolina.  On November 6, 2012, Attorney Joseph Bell, Jr. appeared for Moore.  On 14, 2012, Moore pled not guilty at his arraignment hearing.  The Government moved for detention and the magistrate court ordered him detained. JA 16, 654.  On April 11, 2013, the defendant appeared before Magistrate Judge David S. Cayer and pled guilty to Count One of the Bill of Indictment, in a straight-up plea.  The district court entered judgment on September 15, 2015.  The Notice of Appeal was filed on October 6, 2015.  Criminal

defendants are allowed fourteen calendar days after the entry of judgment to appeal pursuant to the Federal Rules of Appellate Procedure 4(b)(1)(A). Moore's Notice of Appeal was filed in a timely manner. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

I.    A constitutional violation occurred when defendant pled guilty without the assistance of counsel.

II.   The district court committed error by venturing into plea negotiations with defendant.

III.  Defendant should have been allowed to withdraw his plea of guilty.

## STATEMENT OF THE CASE

Moore was charged with Activities Regarding Material Constituting or Containing Child Pornography, in violation of 18 U.S.C. § 2252A. On April 11, 2013, Moore pled guilty to Count One of the Bill of Indictment without a written plea agreement. A written factual basis was not filed in the matter. JA 47. A presentence interview of the defendant was never conducted in this matter. JA 47, 87. Based on his straight-up plea of guilty Moore was found responsible for having possession of an Apple computer (Apple PowerMac serial number

2

G8439ENQQPP) containing a video of a young girl under the age of 18 years old posing nude with a sex toy nearby. JA 654-655. Appellant's late-father, John Daniel Moore, Sr. (Senior) admitted that he purchased the previously-owned PowerMac G5 Apple computer in 2006. JA 655. In September 2009, Senior and Moore brought the computer to the Apple store inside of South Park Mall for servicing. Upon questioning by case agents, Senior admitted his son was the last to use the computer. Senior stated, he had never seen child pornography on the PowerMac or any other computers in their home. He advised agents he did not believe his son would view child pornography. Senior surmised any images found on the computer must have originated with the previous owner. JA 654. The agents were informed of another computer in the house, an iMac/MacOS9, routinely used by Senior. It was only upon the interview with Moore in which it was revealed that Senior and mother operated a newspaper called "Help Me Publications." JA 656. A point confirmed by Mrs. Elizabeth Moore. JA 240. Moore also indicated adult pornography and child pornography would pop-up during web searches. He explained that, in July 2009, while playing a computer game named "World of Warcraft," a message popped up that read, "life is going to change." JA

3

656. Soon thereafter the computer malfunctioned. That event was the impetus to bring it in for servicing which led to the federal charging document on February 21, 2012. JA 14.

In response to the visits from law enforcement, the defendant's family procured legal representation from California. JA 68, 151. It was by way of a trusted family source, defendant's uncles, that Attorney Joseph Luther Bell, Jr., of Rocky Mount, North Carolina, was retained. JA 214. Grady Griffin was a personal friend of Attorney Bell. James Morrison Griffin provided a loan for legal fees to his sister, Elizabeth Griffin Moore and her husband, John Moore, Sr. Both Grady Griffin and James Morrison Griffin are over 80 years old. On November 6, 2012, Joseph Luther Bell, Jr. appeared for John Moore. JA 3. On November 14, 2012, Moore pled not guilty at his arraignment hearing. He was detained by court order. The discovery order was issued the same day. The record demonstrate defendant announced his intent to stand trial and Joseph Bell wrote it down. JA 478. On April 11, 2013, Moore appeared before the magistrate judge and entered a plea of guilty.

The third docket entry after the Acceptance and Entry of Guilty Plea was a *pro se* Motion for Inquiry of Counsel by John Moore. JA 5, 34.

The next docket entry was an Unopposed Motion to Withdraw as Attorney by Joseph Bell, Jr. JA 5, 35. On February 7, 2014, the draft Presentence Report (DPSR) was filed. JA 631. It lists Moore's total offense level at 31, which was adjusted to offense level 28 a three-point Guidelines subtraction for timely acceptance of responsibility, pursuant to § 3E1.1. JA 639, 644. Accordingly, his Guidelines range called for a sentence of 78-97 months of imprisonment. On February 24, 2014, the defense filed Objections to the DPSR. JA 647. On March 26, 2014, document number 22, a Motion for Reconsideration of document number 17 (Motion to Withdraw as Attorney) was filed. JA 39-42.

On May 19, 2014, the undersigned was appointed at the district court level to represent the defendant. On June 4, 2014, the Revised Presentence Report (RPSR) was filed. JA 652. Moore's total offense level at 31 was not reduced to for acceptance of responsibility. JA 659. His corresponding Guidelines range for imprisonment was 108-120 months. During the period from February 7, 2014, to June 4, 2014, no pleading on behalf of Moore was filed expressly denying acceptance of responsibility, without a constitutional reason.

On July 24, 2014, the Government filed a sentencing Memorandum. On July 24, 2014, the defense filed a Motion to Withdraw the Plea of Guilty. JA 44-49. On July 25, the Government filed another Sentencing Memorandum containing approximately 500 pages including exhibits. On July 25, 2014, the Government filed a Response in Opposition to the Motion to Withdraw Plea of Guilty. On July 29, 2014, Moore appeared for sentencing on his conviction, the sentencing hearing was continued. On October 1, 2014, defendant appeared before the district court for hearing on his motion to withdraw plea of guilty and for sentencing. He displayed unusual behavior at the hearing. JA 126, 145. On October 3, 2014, the Government filed a Motion for Psychiatric Evaluation. JA 674-678. On October 6, 2014, the district court granted an Order for psychiatric or psychological examination. JA 679. On January 6, 2015, the Government filed a Motion for Court Ordered Tuberculosis Test. JA 145. On January 7, 2015, the district court ordered forced tuberculosis testing of defendant. JA 149-150. On March 9, 2015, a *pro se* Letter by a non-party, Elizabeth G. Moore was filed. JA 151. On June 30, 2015, an Amended Motion to Withdraw Plea of Guilty by John Moore was filed. On July 6, 2015, Assistant United States Attorney (AUSA) Cortney

Randall filed a Sentencing Memorandum. On July 7, 2015, The Psychiatric Report was filed and a notice of Competency hearing was issued. JA 683. On September 15, 2015, Moore was sentenced to 108 months of imprisonment for the sole count of conviction. Pursuant to 18 U.S.C. § 3583(a)(b), the district court ordered a twenty-year term of supervised release. The district court ordered Moore to pay a $100.00 special assessment and total restitution of $3,000. JA 665, 709. On October 6, 2015, Moore filed a Notice of Appeal.

<u>Statement of the Facts</u>

The district court viewed or had the ability to review the following documents: multiple exhibits, JA 478-491; a letter from Elizabeth Moore, JA 151; motion for inquiry into status of counsel, JA 34; motion for withdrawal by counsel, JA 35-38 and 39-43; motions for withdrawal of plea of guilty with attachments, JA 44-49 and 153-183, 481-487, 489; documents evidencing financial incongruences 163-183; transcript of hearing wherein opposing party sensed the emotional fragility of defendant, JA 103-144; and the forensic evaluation report attesting to mental fragility of defendant. JA 683-695. The district court was aware retained-counsel failed to attack the custodial interview of FBI agent,

Derrick Farmer.  The district court said retained-counsel failed to file a motion *in limine* regarding that occurrence. JA 63.

## SUMMARY OF ARGUMENT

The evidence shows multiple proceedings wherein Appellant should have been allowed to withdraw his original plea of guilty based on a showing he was without zealous representation of counsel. Recriminating documents demonstrate that Appellant should have been allowed to withdraw his original plea of guilty based on a showing of a financial conflict of interest by his former counsel.  Documents viewed by the district court proved Appellant should have been allowed to withdraw his original plea of guilty due to undue pressure to plead guilty by retained-counsel.

Appellant contends it was blatant judicial error for the sentencing court to deny him the opportunity to withdraw his plea of guilty and then turn around and accommodate defendant's initial wish for withdrawal of the guilty plea, on the condition defendant could only enter an Alford plea.  The actions of the sentencing court ignored the basis for withdrawal and allowed withdrawal on the whim of a reason understood only by an irrational defendant and the district court.  The bargain reached was to

the detriment of defendant because the premise of the withdrawal-then-entry of an Alford plea left no room for acceptance of responsibility. Such action is demonstrative of judicial involvement in: plea negotiations; sentencing manipulation and that the district court was overly involved in picking winners and losers at the guilt or innocence level and also at the sentencing phase. That process now influences viability of Appellant's claims.

There is nothing on the record by the probation officer explaining the out of court rescission of the U.S.S.G. § 3E1.1.1, acceptance of responsibility. The record does not allow this Court to review that alleged violation on appeal. As such, the three point increase creates an unreasonable sentence.

## ARGUMENT

I.  A CONSTITUTIONAL VIOLATION OCCURRED WHEN DEFENDANT PLED GUILTY WITHOUT THE ASSISTANCE OF COUNSEL

A.  Standard of Review

The standard of review for a constitutional violation, such, as not having zealous representation at trial is de novo review. *United States*

9

*v. Ductan*, 800 F.3d 642 (4th Cir. 2015). *De novo* review is the standard when objections are filed. *Thomas v. Arn*, 474 U.S. 140 (1985).

## B.  Discussion

A paramount issue on appeal is how Moore's legal fate was changed without the constitutionally-close assistance of counsel. Moore and all criminal defendants are guaranteed legal representation. *Gideon v. Wainwright*, 372 U.S. 335 (1963). Moore posits that right is to competent and zealous legal representation. The special value of the right to assistance of counsel explains why "it has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). An allegation of ineffective assistance should proceed on direct appeal when it appears conclusively from the record that counsel's performance was ineffective. *United States v. Richardson*, 195 F.3d 192, 198 (4th Cir. 1999). Here retained-counsel was feckless in championing Appellant's true intent to stand trial.

At no time before August 10 2015, did Moore waive his right to the assistance of counsel. JA 326-329. He had a right to legal counsel during the critical phases of this matter. Therefore Attorney Bell owed a duty

10

of care to Moore until he was relieved by the district court. Attorney Bell's failure to perform that duty was intentional due to lack of a desire to execute the charge of his capacity. The basis for the subpar performance had a causal connection to attorney fees. The reason retained-counsel shirked his duty to perform was due more to apathy than deficient skills or lack of knowledge of the law. After the last attorney-client meeting Mr. Bell knew Appellant did not fully appreciate the consequence or gravity of his guilty plea. JA 27, 343-345, 355-356. Yet retained-counsel intimated to the magistrate court his client understood the process. It is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. *United States v. Murray*, 65 F.3d 1161, 1165 (4th Cir. 1995). Moore presumes this applies to allegations of unethical behavior of counsel. The district court did not acknowledge the fact retained-counsel did not return money to defendant's benefactor until he was prompted to do so at least twice. This Court may address a claim of ineffective assistance on direct appeal only if the lawyer's ineffectiveness conclusively appears on the record. *United States v. Baldovinos*, 434 F.3d 233, 239 (4th Cir. 2006). The exhibits and other documents clearly demonstrate that is the

11

circumstance here. Hence, Moore was without counsel at his original Rule 11 plea hearing.

### 1.    Deception Observed By the Family and the Defendant

Retained trial counsel, Joseph Bell, knew defendant did not want to plead guilty. JA 478, 151. Mrs. Elizabeth Moore spoke with her son and then with Attorney Bell within the timeframe of one hour after the attorney and client had met on a jail visit on or about April 8, 2013. JA 252, 355. Despite, the objections at the court hearings there is plenty of evidence to support the claim that on or about April 8, 2013, Attorney Bell knew Moore did not want to enter a plea of guilty. Defense Exhibit 1 clearly indicates Attorney Joseph Bell knew Moore wanted a trial. JA 478. North Carolina State Bar Rule 7.2 (2003) discourages the presentation of manufactured information to the court when the attorney knows that the evidence is false. *Blakeney v. Lee*, 2007 U.S. Dist. LEXIS 32922. Attorney Bell comes close to violating the literal rule. The existence of pristine irrefutable evidence of defendant's mindset and his counsel's controverted view of client's position is clear in this matter and it was presented to the district court. The rule is that once a defendant has proven the existence of an actual conflict, only an adverse impact on

the attorney's performance must be shown. *Reckmeyer v. United States*, 709 F. Supp. 680, 688 (E.D. Va. 1989), citing *Ruffin v. Kemp*, 767 F.2d 748, 752 (11th Cir. 1985). Attorney Bell testified a majority of his legal fee was exhausted by April 2013. At that point he had no incentive to take the Child Pornography case to trial. Therefore, the lack of funds impacted Attorney Bell's legal services.

Though not dated we may ascertain the time of the document was before April 13, 2013. With so few visits by retained-counsel we know Exhibit 1 had to have been generated on or about April 8, 2013 or April 10, 2013. JA 126. Apparently, retained-counsel was thoroughly convinced trial would have been an exercise in futility. That mindset of a terrible outcome was the impetus to memorialize his client's intent on paper. The suspected reason why an attorney would write the statement is to use it as a shield against liability in the event of a Title 28 Section 2255 claim. Counsel could then respond that he warned defendant of the risk of trial and its punitive consequence. However, in this matter appellant should prevail for counsel was duty bound to try the case, despite the sensibility of counsel. Attorney Bell has no defense because he abandoned his fiduciary duty efforts by failing to: file a motion to

continue the docket call instead of rushing into the plea hearing; suppress evidence based on a claim of duress by the case agents; investigate the claim that Senior was the possessor of the pornography or; develop mitigating evidence for sentencing based on defendant's emotional capacity. *Rompilla v. Beard*, 545 U.S. 374, 125 S. Ct. 2456, 2463, 162 L. Ed. 2d 360 (2005). To avoid a trial retained-counsel relied on promises, threats and defendant's religious affinity. The above ingredients aided retained-counsel to perpetrate a farce on the magistrate court. JA 73.

Exhibit-1 now serves as the sword of justice to prove counsel intentionally shirked his duty of representation and finagled a plea hearing knowing his client wanted a trial. JA 478. A criminal defendant retains the right to plead guilty or stand trial. "The right to decide whether to plead guilty….belongs to the defendant, not to counsel." *United States v. Moussaoui*, 591 F.3d 263, 290 (4th Cir. 2010) citing *Roe v. Flores-Ortega*, 528 U.S. 470, 485, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). This right remains with Moore, no matter how counterintuitive the decision might be in the mind of Attorney Bell.

Mr. Bell never took steps to fulfill his client's actual wishes. Mr. Bell met defendant and defendant's family yet he failed to pursue or investigate the need for a mental evaluation. There was no strategic reason for the aversion to investigate the mental capacity of his eccentric client. *Jackson v. United States*, 638 F. Supp. 2d 514 (2009). Assistant U.S. Attorney, David A. Thorneloe was in the presence of Moore for one hearing and he ascertained the need for mental evaluation. JA 62, 674. With the money running out fairly quickly retained-counsel make a practical business decision. JA 357. The decision was made by Attorney Bell to plead his client out, notwithstanding objections by Moore and his family. JA 151-152.

"The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. *Strickland v. Washington*, 466 U.S. 668, 691-692 (1984). The judgment in this matter is suspect. The alleged Alford plea was begat from the malfeasance of Attorney Bell. *North Carolina v. Alford*, 400 U.S. 25 (1970). It was the

15

lack of zealous representation in April 2013, that left the defendant scurrying unsuccessfully to cross examine his legal assailant, Attorney Bell, at a hearing on August 10 2015. Arguably, the revealing look into the dire attorney-client relationship is the reason behind the district court's attempt at fashioning a make-up plea.

Though circuitous the road to the *Alford* Plea leads back to the deliberate decision of retained-counsel to suppress his hand-written notes of Moore's intentions. JA 478. The goal of retained-counsel was for the temporary easy fix of a plea of guilty. In a circumstance of denial of counsel, actual or constructive, prejudice is presumed. *Strickland* at 692. Moore's denial of counsel is not a matter of guess work, opinion or speculation. In addition to the *pro se* letters to the district court, there were additional tangible indicia of pecuniary irregularities starting on March 9, 2015, and then on June 30, 2015. JA 9, 151-152, 153,164,183, 482-487. The district court was subsequently informed of Defendant's Exhibit 1 on August 10, 2015. JA 235, 337 478. In the aggregate Mr. Bell did not step up and answer the call to duty owed to his client. JA 425. The financial pressure, of returning money to Mr. Griffin, when that was not in the written plan, contributed to the lethargic efforts of retained-

16

counsel. JA 481. In testimony retained-counsel said in the presence of the district court that distance was a reason for not making an earlier visit to see defendant, the day before the presentence interview in Charlotte, North Carolina. JA 361. Joseph Bell's financial record noted there were issues with the presentence interview. JA 179. Joseph Bell stated he would always meet with his clients before their presentence interview if they were close by. JA 361. The distance from his office should not serve as a criterion for competent service. Again trial counsel was feckless not because of his legal skill, but due to his indifference towards defendant. The district court was aware of defendant's claim of innocence, "this is against every fiber", before the magistrate court on April 11, 2013. JA 25 167, 196. The above information came to light before the district court took the *Alford* Plea and pronounced the sentence.

The dwindling reserve of legal fees along with the vile subject matter of the indictment and long travel time trumped counsel's will to proceed to trial. JA 165-182, 357. In essence defendant did not stand trial because counsel did not want to proceed to trial partially for financial reasons. JA 357. A four-day period which included travel to Charlotte,

North Carolina, cost approximately $4,800.00, according to the invoice of retained-counsel. JA 172. A multiple-day trial, 223 miles away from counsel's office in Charlotte, North Carolina, would have placed the attorney in a financial deficit he did not want to absorb. JA 155. In his hand written notes retained-counsel made it clear it was all about the money. He wrote "[b]ill against the trust account- If leftover, goes back to Griffin but unlikely." JA 481. Actually, money was left over, the attorney simply failed to return any to his client's uncle, Mr. James Morrison Griffin without a reminder from a third party. JA 482-487. All the minutia of seemingly inadvertence adds up to deliberate intent to deceive on the part of retained-counsel. Joseph Bell states in his motion to reconsider counsel's motion to withdraw, he knows of no basis for defendant's withdrawal of his plea of guilty. JA 41. Yet retained-counsel was in possession of a document he wrote regarding said defendant's wish not to enter a plea of guilty and instead stand trial. JA 478.

Another reason to withdraw the plea would be for lack of knowledge on defendant's part. Considering counsel's statement that a lot of work was done early in the case, before February of 2013, which lends credibility to the notion that discovery was not thoroughly discussed.

18

Another discrepancy is him testifying that money was not a factor in his advice to his client, yet he testifies about being preoccupied with dwindling fund and yet money is left over. JA 357. This indicates the funds are dwindling down and none is left to have a trial. However, there would be a reserve if defendant pleads guilty and counsel limited his trips to Charlotte, North Carolina. That includes the habitual visitation to other clients a day before their presentence interview. JA 361. Another discrepancy is retained-counsel appearing before the magistrate judge and purporting that defendant's plea was willful and voluntary, when he knew the plea was based on his belief, that it is in the best interest of defendant to plead guilty, rather than the actual wish of defendant. JA 364. In the aggregate the plea colloquy was not a voluntary action by defendant but a farce to conserve legal fees. The plan was to fight it at sentencing or at a later date. JA.72, 73, 74, 401.

### 2. Follow the Money

The North Carolina State Bar strongly urges written fee agreement. Protection of the vulnerable is a reason. An octogenarian who needs others to assist him in his affairs is vulnerable. That describes Mr. James Morrison Griffin. In this matter the elderly man was

vulnerable when dealing with his close friend, Attorney Bell. Under prevailing professional norms, Attorney Bell's representations amounted to incompetence. *Strickland*, 466 U.S. at 690. Like the victim of a cheating spouse, no one sees it coming because you do not expect danger from within. Here Mr. James Morrison Griffin and others needed assistance with handling their affairs relating to the attorney fees. JA 151, 164. In fact the attorney experienced a period of unjust enrichment until the financial error was detected. Attorney Bell knew Mr. James Morrison Griffin socially for a long time. Take note Mr. Griffin did not sue the attorney nor did he file a bar complaint against him for overbilling. JA 704. Please note how the attorney's equivocation caused his legal assistant to be subpoenaed. JA. 699-702, 703, 705.

From evidence we now have, chicanery was afoot from before the time of the plea hearing. Retained-counsel was hired on the good faith belief he was ready willing and able represent Moore at trial. JA 133. Evidence from the hearings shows over a two year period, Moore received only four jail visits prior to the Rule and Plea Hearing. JA 414-415. He did not get the fiduciary care acceptable in the Western District of North Carolina. A client with Moore's emotional capacity deserved double the

20

care and Moore received half of the time. Moore didn't get the time to hear, review, experience and mentally digest the discovery. Retained-counsel did not have time to complete his commission due to the dissipating legal funds and long distance to the jail. What the attorney had time for was to promise Moore a lenient sentence. JA 70,151. When that did not work retained-counsel relied on the proverbial threat of crucifixion to scare defendant into saying he is guilty. JA 151, 206.

Retained-counsel was not a rookie attorney; he clerked for a district court judge. JA 425, 348. He is the experienced criminal professional at an established multi-lawyer firm. JA 276 349. There is a good argument that incompetence was not the culprit, here. Indifference is the blame, it substituted for professional duty. The taxing nature of traveling out of town and staying out of town to defend a client regarding a vile subject matter caused retained-counsel to abandoned ship.

Retained-counsel went forward with the plea process. Testimony revealed a sizeable chunk of the fee had been earned at that point in time. JA 357. As such going to trial would have been an involuntary pro bono even for retained-counsel. However, that is not justification to abandon a client. A candid alternative would have been to withdraw before the

21

critical plea phase. Withdrawing afterwards is just a social posture to save face before the AUSA and defense bar that the attorney is not one to desert a client until after the guilt or innocence phase, the heavy work, has been done. The constitutionally objectionable action is the apparent subterfuge of knowing the defendant's actual intent yet masquerading as his champion knowing full well the actual reality. This is far worse than any legal mistake or professional inadvertence. This was motivated by the love of money. Specific to this case was the need to cut a business loss early. Attorney Bell filed a follow-up to his motion to withdraw. JA 5, 35-43 360-361. He was in a haste to withdraw. In the larger scheme the lawyer should be the only person responsible for his or her bad prediction in assessing the cost of a case. If a losing fee agreement is contracted the attorney should silently bear the burden. A client should never be detrimentally affected. Moore was prejudice therefore the attorney's service was feckless.

Counsel overbilled in a case he long gave up on. The benefactor was an elderly citizen, over the age of eighty years old. In retained-counsel's haste to extricate himself from the bad financial situation, he disclosed unnecessary client information which triggered the revocation of

22

defendant's three-points for acceptance of responsibility. This was clearly a violation of counsel's duty of confidentiality under. *Strickland*, *see United States v. Elkins*, 2013 U.S. Dist. LEXIS 101058. Attorney Bell's motion is inappropriate because though defendant asserted ineffective assistance on the part of counsel, some matters disclosed were not done out of necessity for counsel to defend himself against the claim. JA 39-43. Also without an order relieving counsel, he still had a duty to advocate on behalf of defendant or at least not to argue against defendant on his claim for withdrawal of his plea. *United States v. Shaffer Equip. Co.*, 11 F.3d 450 (4th Cir. 1993). Attorney Bell's commented in his second motion to withdraw regarding him knowing of no basis for withdrawal of defendant's guilty plea; that was an example of excessive disclosure. It takes the reader into the minds and secret conversations of counsel and his client. Incidentally, it is incorrect and misleading. There are legitimate reasons for withdrawal, independent of a claim of feckless assistance by counsel: the revelation that Senior possessed the computer and indecent materials; the mental incompetency of Junior at the plea hearing; the ineffective assistance of the attorney from California and a due process violation committed by the case agents when Moore was

interrogated by them without counsel. The unnecessary disclosure demonstrated, Attorney Bell took a gratuitous swipe at his client on his way out the door. This was all done to assure an order granting his motion to withdraw. The attorney wanted to clear this case from his obligations so he would not have to spend time and money to travel to Charlotte, North Carolina.

### 3.    Prejudice to the Defendant

The strongest opposing view point is; usually the information given by the court at the Rule 11 hearing corrects or clarifies any alleged erroneous information given by the attorney. *United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992). The above does not apply on deliberate act of subterfuge by attorney. Counsel's incompetence can be so serious that it rises to the level of constructive denial of counsel which can constituted constitutional error without showing of prejudice. *United States v. Cronic*, 466 U.S. 648 (1984).

Defendant having pled guilty waived all non-jurisdictional errors leading up to this conviction, except those affecting the adequacy of his plea. *United States v. Moussaoui*, 591 F.3d 263 (4th Cir. 2010). Moore has been steadfast in his claim of undue coercion, deception and

ignorance.  The unreasonable hope of a favorable sentence and threats of crucifixion lead to his compliance at the Rule 11 hearing. JA 151, 211.

Defendant reports retained-counsel did not thoroughly attempt to harvest any viable theory of defense *e.g.*, alibi –defendant did not permanently live with his parents, defendant's father used the computer, despite mother's testimony.  The kitchen was actually upstairs not downstairs. JA 265

Moore has shown that there is a reasonable probability that but for Attorney. Bell's act of coercive pressure to plead guilty, he would have insisted on going to trial.  *Bennett v. United States*, 2011 U.S. Dist. LEXIS 78046; citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Therefore, it was an abuse of discretion and error for the trial court not to permit Moore to withdraw his guilty plea. *Williams v. Muse*, 2014 U.S. Dist. LEXIS 88199.  This conviction should be overturned and remanded back to the Western District of North Carolina.

## II.  THE DISTRICT COURT PARTICIPATED TOO MUCH IN THE NEGOTIATED PLEA

### A.  Standard of Review

This Court will apply harmless error review when the claim is that the district court participated in plea negotiations.  However, when an

25

objection was lodged at the sentencing hearing and the matter was preserved the standard is de novo review. *United States v. Ductan*, 800 F.3d 642 (4th Cir. 2015). De novo review is the standard when objections are filed. *Thomas v. Arn*, 474 U.S. 140 (1985).

**B.    Discussion**

The tenuous plea hearing procedure left doubt in the minds of most observers regarding whether a factual basis exists for the defendant' guilt. *United States v. Flores-Lopez*, 2008 U.S. Dist. LEXIS 43127. Actually, in the home district a factual basis is required to be filed at or about the time of entering a plea of guilty. JA 78. In this matter the district court shied away from full compliance with that procedure. Failure to follow procedure was an endorsement of the prior deficiencies which occurred before the magistrate judge on April 13, 2013.

**1.    The Magistrate's Court Should Have Perceived the Signs**

The magistrate court might not have had full view of the farce perpetrated by retained-counsel however; enough was said on the record to alert the judicial official that a knowing and voluntary plea was futile at that time. At multiple times Moore asserted his innocence. JA 70,124. It should have been obvious to the magistrate court that Moore's plea was

26

not knowingly done when defendant said: he wants to fight it and nothing was done intentionally. JA 25. Moore continued to vent his frustration in a diatribe which contradicted his prior statements of guilt. JA 26-27. At that point, the continuation of the proceeding by the magistrate judge is a risk that court made to the detriment of Appellant. Moore contends while it might be normal for one accused of a less reprehensible crime, to bicker about drug responsibility or minimal or minor participation on a plea agreement, it was not for him. First there was only one charge on the bill of indictment therefore the maximum sentencing exposure was not up for debate. Secondly, the crime is so vile one would not easily change his posture in a matter of seconds, especially after a heated conversation, in the holding cell. The record demonstrates Appellant felt pressure not to keep the judge waiting. JA 70, 74, 151, 342-343.

### 2. The Power of the Court Does Not Trump the Requisite for a Knowing and Voluntary Plea of Guilty

Moore recognizes district courts have broad authority to overturn any Rule 11 decision made by a magistrate judge. *United States v. O'Neil* 352 citing *Peretz v. United States,* 501 U.S. 923, 924, 11 S. Ct. 2661, 115 L. Ed. 2d 808 (1991) (quoting 28 U.S.C. § 636(b)(3)). However, such

27

powers should be discharged with considerable discretion. In light of the evidence admitted by the defense at the sentencing hearing, regarding breach of the fiduciary duty by retained-counsel, Moore should have been allowed to withdraw his plea without a condition precedent attached to it.

Assuming, arguendo, there was no legitimate basis for withdrawal then the district court should have stopped at that point and ventured into the muted reason why the U.S. Probation Officer voided the reduction for acceptance of responsibly and following that, then proceed to sentencing Moore. There is nothing explaining the out of court rescission of the U.S.S.G. § 3E1.1.1 acceptance of responsibility in the presentence report. After all, during the period from February 7, 2014, to June 4, 2014, no pleadings filed were fundamentally different from what had been filed from April 11, 2013, to February 7, 2014, regarding acceptance of responsibility. To the extent anyone can read withdrawal of acceptance into the record; Moore is allowed to advance his right to trial on constitutional grounds. Such a position is a reason for him to maintain his three-point reduction under U.S.S.G. § 3E1.1.1. It is evident that his fundamental right to counsel was denied. That denial

28

opened up the avenue for him to request to start anew the pretrial process.

The addition of the condition precedent, for withdrawal of the guilty plea taken by the magistrate's court, demonstrates an unnatural preoccupation by the district court with what was supposedly a firm plea of conviction. This Court should require more than a relatable point between the district court and the litigant to form the basis for withdrawal. No matter if it was better for the defendant's soul. JA 94. Something more than mental telepathy is required. It was reversible error for the district court to participate impermissibly in the plea negotiations by expressly telling the defendants that in the court's view they might be "better off" pleading guilty. *United States v. Bradley*, 455 F.3d 453 (4th Cir. 2006). Here the district court and litigant Moore negotiated plea terms, over the objections of appointed counsel. JA 499, 501, 520-521. "By arguing before the district court's ruling that the enhancement should not apply, Appellant preserved [an] objection." *See United States v. Clark*, 434 F.3d 684 (4th Cir. 2006). In the instant matter, appointed counsel objected to the appropriateness of an Alford Plea wherein appellant had nothing to gain. JA 575-576. The district

29

court should have realized then that Moore was not mentally competent to make an ad hoc decision.  That is based on the evaluation report. JA. 683, 692.  Moore needs time to reflect on any decision.  The evidence developed at the hearing showed Moore was acting on impulse. JA 495, 516.  The district court even commented how a few minutes ago he is accepting guilt and then he is retracting it. JA 506. As such he was in no condition to make a sound decision.  He was hurting himself.  JA 506. The district court intimated to Appellant, that an accused would submit to an *Alford* plea, and not fight the case in hopes of getting a better sentence. JA 514.  The irony is Moore was baited into the novelty plea to assure a more solid plea colloquy than that of April 11, 2013.  The fringe of the Alford plea for the prosecution is the forfeiture of Moore's reduction for acceptance of responsibility. JA 575-576.

Moore did not have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding –and whether he [had] a rational as well as a factual understanding of the proceedings against him."  It is axiomatic that the failure of the trial court to provide an adequate competency determination violates due process by depriving the defendant of his constitutional right to a fair trial.  *Hatfield v.*

30

*Ballard*, 878 F. Supp. 2d 633, 647 (2012); 2012 U.S. Dist. LEXIS 95182. At least twice the district court used its influence of an authority figure over an impressionable defendant to elicit an impulse response from Moore. The first time was at the hearing on August 10, 2015, to temporality separate counsel from client. JA 336. That led to an ineffective examination of Attorney Bell. The second time was at the final sentencing hearing. That led to a conviction without limited recourse as compared to the alleged April 11 2013, conviction. JA 515, 576. Moore should not have been allowed to proceed without counsel due to the evidence of his low impulse control. He would naturally choose the immediate tension relieving goal to the detriment of his long term objectives. Additionally, he was not competent to proceed without counsel at the hearing in which he cross-examined Attorney Bell. *Muhammad v. State*, 177 Md. App. 188 (2007).

The nebulous mutual consent of litigant and sentencing court did not leave any appreciable legal footprint for this Court to review on appeal. JA 494, 517-519, 524-525. A sentencing court's findings on controverted matters ensure a record for effective appellate review. *United States v. Bolden*, 325 F.3d 471, 497 (4th Cir. 2003). Bolden speak

31

to alleged inaccuracy in the PSR however Moore finds it instructive to the controverted issues here. The plea deal was not beneficial to Moore from a practical point of view. His term of confinement was not shortened and his appellate argument was diminished. At least in *Bradley* those defendants saw a carrot at the end of the proverbial stick. Here Moore was influenced into a position without any quantifiable reward. Even the district court acknowledged the fruitless decision. JA. 576. Well after the same court suggested to the feeble-minded defendant he might get a better sentence with an Alford plea. JA 514. Therefore the impartial arbiter's action leaned in the direction of a prosecutor. As such impartiality was lost and so was any constitutional virtue.

## III. APPELLANT SHOULD HAVE BEEN ALLOWED TO WITHDRAW HIS PLEA OF GUILTY

### A. Standard of Review

We review for abuse of discretion a district court's decision regarding whether to allow a guilty plea to stand. *United States v. Benton*, 523 F.3d 424, 432 (4th Cir. 2008). Abuse-of-discretion standard of review applies to appellate review of denial of defendant's motion to withdraw a plea of guilty. *United States v. Thompson-Riviere*, 561 F.3d 345 (4th Cir. 2009) citing *United States v. Torres-Rosario*, 447 F.3d 61

(1st Cir. 2006) citing *United States v. Torres-Roserio*, 22 F.3d 368, 371 (1st Cir. 1994). We review the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir. 2000).

### B.   Discussion

#### 1.   There Are Valid Reasons for Withdrawal of the Plea of Guilty

The plea should have been withdrawn because: (1) it was not knowing or voluntary; (2) Moore asserted his legal innocence; (3) there was a short delay between entry of the plea and filing of the motion to withdraw; (4) there is ample evidence of issues with the close-assistance of counsel; (5) with the number of times the sentencing was continued withdrawal would not have prejudiced the Government; and (6) the district court said waste of judicial resource was not a factor it considered in this case regarding withdrawal. *United States v. Moore*, 921 F.2d 245, 248 (4th Cir. 1991). If these strong reasons did not support withdrawal then it should not be withdrawn on the whim of the district court at the time of sentencing, as argued above. The sentencing court should not have a back-up sentencing procedure. A clear time of guilt should have been established on the record.

Moore should have been able to withdraw his initial plea of guilty at some point before his final sentencing hearing, because he demonstrated "fair and just" reasons pursuant to Fed. R. Crim. P. 11(d)(2)(B). The relevant factors being the force of the reasons given for the request, its timing, any assertions of actual innocence, indication that the plea was less then fully informed and voluntary, and possible prejudice to the Government. *United States v. Parrilla-Tirado*, 22 F.3d 368, 371 (1st Cir. 1994). While court can consider a defendant's claim of innocence in support of a motion to withdraw a plea, a defendant may have valid reasons for withdrawing a plea "that have nothing to do with innocence." *United States v. Fisher*, 711 F.3d 460, 467 (4th Cir. 2013). That is a consideration here. For Moore complained of a miscarriage of due process, despite the evidence against him.

The record patently demonstrates Moore has psychological impediments which interfered with his judgment: "delusional thought processes, based on early observation of religious preoccupation and fixation on government corruption." JA 691. Though his emotional deficiencies did not rise to a clinical level, in the opinion of the examiner, they should have given pause for concern to individuals who met with

34

him. The mental health examiners recognized Moore as being: highly verbal; controlling of conversations; overly concerned about what others would do with information about him and his hypersensitivity to good and evil. JA 689. The 55 year old male still lived at his parent's home without any outside meaningful relationship. JA 688, 689. A lay person would describe Appellants sensitivity to others perception of him as paranoid and schizophrenic. Moore reacted angrily to questions about his dating relationships. JA 687. Moore's uncontrolled impulse or need to demur to patriotic or religious authority allowed him to be interrogated by federal agents at the FBI office without the physical presence of an attorney. JA 26, 59, 122-123, 128,140, 322, 495-496, 688, 692. Moore was not given water or a break for over two hours. JA 123. The agents made misrepresentation to Moore which influenced his decision to make statement against his interest and had the effect to alter his decision to plead guilty. That was enough for the plea to be withdrawn. *United States v. Fisher*, 711 F.3d 460 (4th Cir. 2013). Moore will comply or refuse a request for religious reasons. Attending religious services are a priority in his live. JA 688, 690. Secondly, organic psychological challenges stymied his rational. JA 690-692. The above shows a

35

defendant belligerent to the federal government. Not for the sake of simply being rebellious; he just lost trust in them. Yet the sentencing court chose to believe that all of a sudden Moore was going to change his mind and position of defiance towards the government and just capitulate on April 11, 2013. The evidence shows a complex picture of a man who would only do so after coercion of a lighter sentence, or threat of a harsher sentence. All this information was before the district court before the date of sentencing. Therefore the district court had knowledge of a cognizable claim of injustice under the Constitution. JA 682-695. Yet if balked at the opportunity to take curative measures.

The timing of defendant's objection to pleading guilty was appropriate. Exhibit 1 indicates Moore protested at the jail visit by Attorney Bell on April 8, 2013. Moore protested at the courthouse holding cell before the plea hearing on April 11, 2013. After asking, may he be honest, which would produce a reasonable deduction or clue that he had not been earlier, he states every fiber of his being wants to fight it as one occurrence. JA 25. His reason for wanting to fight it is because nothing he did was malicious or intentional. The operative word "intentional" should have been a third clue, if we count he wants to fight

it. The fact that Moore states he is accepting responsibility because he is a sinner, not because he did anything malicious like others who are punished for the crime is another tell-tale sign he was not fully engaged and committed to the proceedings. Someone should have figured out that he believed the law is exceedingly overly broad because it applies to people who intentionally and knowingly possessed child pornography on a computer and also to people like him who are just online and child pornography might have just popped up on his screen when he clicked on different websites. Moore went on to say the law as he sees it is throwing everybody in the same barrel. JA 26. Moore explains he was misunderstood by the authorities. He attempted to cooperate with them and they failed to see that he didn't do it. According to him, the agents took what he said and used it against him. JA 27. The last part is not only a denial of guilt it is an accusation of corruption on the part of the federal government. JA 689, 690. The same delusional thought processes and religious preoccupation and fixation on government corruption prompted experts at Butner Medical facility to refer him for psychiatric consultation. JA 691. That was approximately two years after the date of the plea hearing. Hence his mindset is chronic, consistent and

37

notorious. Yet the magistrate court and district court overlooked the oddity of his statements at the first plea hearing and accepted the plea of guilty. The same is true of the U.S. Presentence Officer who initially assigned him a three point reduction for acceptance of responsibility after all that he said on April 11, 2013, and on September 30, 2013, in his Motion of Inquiry of Counsel. On or about June 4, 2014, over one year later, the probation officer then revoked the U.S.S.G. § 3E1.1 reductions for no apparent reason. The intervening Motion to Continue Sentencing Hearing, document number 24, contained no text regarding withdrawal issues. Therefore, if maintaining the same posture he had at the plea hearing is deficient to sustain acceptance of responsibility said behavior should have impeded his ability to proffer a plea of guilty on April 11, 213.

Moore asserted his actual innocence at the first plea hearing on April 11, 2013. JA 75, 77. He doubled down on that stance at several attempts to conduct sentencing in the matter. JA 506.

The plea was less than fully informed and voluntary because of undue coercion by counsel. According to transcript, Attorney Bell also threatened Moore with being crucified by the government. JA 151, 206.

38

Another reported tactic was the promise of a lesser sentence. JA 151, 209. The aforementioned establishes the defendant entered the plea because of off-the-record promises and threats. These utterances are antithetical to the questions on the plea colloquy. JA 30-33.

In addition to the *Moore* factors other reasons for withdrawal were presented to the lower court. The district court saw: a: conflict of interest by counsel; financial discrepancies; threats made to defendant; the existence of a viable theory of defense, being that defendant's father possessed and used the computer in his business and Six Amendment violation due to lack of zealous effort by retained-counsel. Other factors are defendant's irrational state of mind, the fact that retained-counsel had an obligation to file a motion for evaluation. *Wiggins v. Smith*, 539 U.S. 510, 522-23, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003). That avenue was never pursued by retained-counsel. A defense counsel shall conduct some sort of pretrial investigation other than review of discovery furnished by the government. *Elmore v. Ozmint*, 661 F.3d 783 (4th Cir. 2011). Other than hiring a computer forensic expert, we see little if any development of a theory of defense by retained-counsel.

"A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. O'Neil*, 352 Fed. Appx. 859, 863 (2009) [2009 U.S. App. LEXIS 25632; citing *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007). The sentencing court found none of the above reasons or combination thereof warranted a withdrawal. However, the court *sua sponte* accommodated the litigant's request for an arbitrary and whimsical reason, so the defendant may clear his conscience. The caprice of the district court is no comparison to established formulas for plea withdrawal. Hence, the district court abused its discretion by denying the withdrawal for sound reasons. The sentencing court then followed a questionable ruling with a tenuous reason to allowed Moore to withdraw his plea of guilty on September 15, 2015.

## CONCLUSION

For the reasons set forth above, the undersigned respectfully prays this Court will vacate and remand for resentencing.

Respectfully submitted this 2nd day of February 2016.

**/s/ Denzil H. Forrester**
Denzil H. Forrester
N.C. State Bar No. 24976
Denzil H. Forrester Attorney-at-Law
3325 Washburn Avenue, Suite 103
Charlotte, NC 28205
(704) 632-9992-v
(704) 632-9969-fx
denzilfesq@aol.com

*Counsel for Appellant*
   *John D. Moore, Jr.*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App.
    P. 32(a)(7)(B) because:

    > this brief contains <u>8,331</u> words, excluding the parts of the
    > brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App.
    P. 32(a)(5) and the type style requirements of Fed. R. App. P.
    32(a)(6) because:

    > this brief has been prepared in a proportional spaced
    > typeface using <u>Microsoft Word</u> in <u>14 point Century</u>.

Dated: February 2, 2016          **/s/ Denzil H. Forrester**
                                 Denzil H. Forrester

                                 *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on February 2, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
P.O. Box 1460
Richmond, VA  23218
(804) 249-7770